UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - against - | :   22 Cr. 06058-CJS-MWP |
| MARK ANTHONY PHILLIPS, | :   **MOTION TO DISMISS** |
| Defendant. | : |

-------------------------------------------------------------- x

      Defendant MARK ANTHONY PHILLIPS, by and through his attorney, CAMILLE M. ABATE, ESQ., hereby moves this Court to dismiss the instant indictment, and for such other and further relief as to this Court seems just and proper.

Preliminary Statement

      On May 3, 2022, the Grand Jury of the District Court for the Western District of New York, indicted Defendant Mark Anthony Phillips on five counts of Money Laundering in violation of 18 U.S.C. §1956(a)(3)(B) and (C). The gravamen of the indictment is that, on five separate occasions, during the period from December 6, 2020, until April 24, 2021, Defendant Phillips purchased Bitcoins from a federal undercover agent, after the undercover agent represented to Phillips that the Bitcoins were the proceeds of a specified unlawful activity.  The indictment does not – indeed, cannot – allege that the purchased Bitcoins actually were the proceeds of unlawful activity.  The indictment likewise does not allege that Defendant Phillips was part of a conspiracy to commit these specified criminal activities, nor does it allege that Phillips himself was a participant in any such specified criminal activities.  Phillips' alleged liability is premised solely on his purchase of the Bitcoin itself, without any other connection to

criminal activity.  The government concedes that the purchase or use of Bitcoin is not, in and of itself, illegal.  (*See* Criminal Complaint, Dkt. 1 at p. 2, ¶ 7)

Defendant Phillips now moves to dismiss the indictment on the grounds that transactions for Bitcoins are not covered by 18 U.S.C. §1956, and that the indictment fails to allege a crime and is therefore insufficient on its face.

## Statement of Facts

Bitcoins, a species of virtual or cryptocurrency, are electronic units that can be traded and used as a medium of exchange.  They are not *fiat* currency, that is, they are not issued or guaranteed by any jurisdiction or any government.  They are not legal tender in any jurisdiction, which means that there is no requirement that they be accepted as payment.  They have no fixed rate of exchange with regard to any fiat currency, which means that their value in terms of fiat currency varies widely and chaotically. Instead, their value in terms of fiat currency is set by the internet community that uses them.  In that community, and only in that community, they can be used in exchange for fiat currency, or to pay for various goods and services.  They cannot be used to purchase items from one's local grocery store, for example. The IRS regards Bitcoin as property, not currency.  (*See* IRS Notice 2014-21, submitted herewith as Exhibit A.)

Bitcoin was created in 2009.  The money laundering statute was enacted long before, at a time when neither Bitcoin nor any other form of virtual or "crypto" currency existed.

Phillips came to the government's attention when the undercover agent responded to an ad on Craigs List that stated that Phillips and/or one of his companies would buy or sell Bitcoin and other virtual currencies. (Criminal Complaint, Dkt. 1, p. 8) Thereafter, the undercover and Phillips met on several occasions in the period from November 2020 to April of 2021.  The

indictment alleges that on five separate occasions during this period, Phillips purchased Bitcoins for cash.

Argument

**THE INDICTMENT MUST BE DISMISSED BECAUSE TRANSACTONS USING BITCOIN CANNOT BE THE BASIS OF A MONEY LAUNDERING OFFENSE WITHIN THE MEANING OF 18 USC § 1956.**

The indictment is insufficient on its face. The money laundering statute, 18 U.S.C. §1956, does not apply to Bitcoin transactions. Because it fails to state a crime, the indictment must be dismissed.

The indictment accuses Defendant Phillips of violations of 18 U.S.C. §1956(a)(3)(B) and (C), based on his exchanging cash for a quantity of Bitcoins. 18 U.S.C. §1956(a)(3)(B) and (C) reads as follows:

> **(a)(3)** Whoever, with the intent—
>
> **(B)** to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
>
> **(C)** to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a *financial transaction* involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

Thus, for the money laundering statute to apply to Phillips's purchase of Bitcoin, the term *financial transaction* must include Bitcoin transactions. However, a review of the text of §1956 shows that Bitcoin simply does not fit into its description of a "financial transaction."

Section 1956 (c)(4) sets forth a specific definition of the term *financial transaction* as it is used in the statute:

>**(4)** the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

Clearly, Bitcoin transactions do not involve "…the transfer of title to any real property, vehicle, vessel, or aircraft" as set forth in §1956(c)(4)(A)(iii). They also do not fit into §1956(c)(4)(B), "… a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." Bitcoin was not issued by a financial institution.

It is equally clear that Bitcoins do not fit into the definition of *monetary instruments*. Section 1956(c)(5) defines "monetary instruments" as follows:

>**(5)** the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery….

Thus, neither Bitcoin, nor any other cryptocurrency, is mentioned in the definition of *monetary instruments*. Furthermore, all the instruments that are included in the definition of money instruments have a fixed, redeemable value in fiat currency. By contrast, Bitcoins do not have a fixed, redeemable value in a fiat currency. Accordingly, they cannot be considered monetary instruments either by designation or implication.

The question of whether the term "funds," as it is used in 18 U.S.C.1956(c)(4), encompasses Bitcoin, is more complicated, because the statute does not define the term. At least two District Court decisions, *United States v. Ubricht*, 31 F. Supp.3d 540 (SDNY 2014), and *United States v. Budovsky,* 2015 W.L. 5602853 (SDNY 2015), hold that the term *funds* does encompass Bitcoin. One United States Magistrate's decision*, United States v. Petix,* 2016 WL

4

7017919 (WDNY 2016), holds that it does not. To the best of counsel's knowledge, no Circuit court has yet addressed the issue.

For the reasons that follow, this court should reject *Ubricht* and *Budovsky*, find that the term *funds* in 18 U.S.C. §1956(c)(4) does not include Bitcoin, and dismiss the indictment against Mark Anthony Phillips.

A. <u>The Ordinary Meaning of "Funds" is Money</u>.

As the Supreme Court stated in *Taniguchi v. Kan Pacific Saipan,* 566 U.S. 560, 566 (2012), "When a term goes undefined in a statute, we give the term its ordinary meaning." (Citations omitted.)

The issue before the court in *Taniguchi* was whether a prevailing party in a civil suit could be reimbursed, as court costs, for fees paid to persons who translated foreign language documents into English. The decision hung on the meaning of the word *interpreters*, as it was set forth in the 1978 amendment to 28 U.S.C. §1920(6), which first made "compensation of interpreters" compensable as a court cost. Significantly, in determining whether the ordinary meaning of the word *interpreters* included translators of documents, the court did not look primarily for its ordinary meaning at the time of the court case before it. Instead, the court looked at its ordinary meaning in 1978, when the amendment that made interpreters fees compensable was passed. Concluding that the ordinary meaning of the word *interpreters* did not include translators of documents, the court precluded the translators' fees from being included in the costs. *Id.*

Applying the wisdom of *Taniguchi* to the instant situation, it is clear that the term *funds* as it occurs in the money laundering statute, cannot encompass Bitcoins. Bitcoins were created in 2009. It is undisputed that they did not exist at the time the money laundering statute was

5

enacted. Congress therefore could not and did not intend for the term *funds* to include Bitcoins.

Furthermore, the statutory context in which the term *funds* appears makes it clear that it does not apply to Bitcoins. For this purpose, the definition of "monetary instruments" should be used as a guidepost to interpret *funds* as it used in the definition of "financial transaction."

The definition of "monetary instruments" in §1956(c)(5) is as follows:

> **(5)** the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery….

The characteristic shared by each of the instruments identified in the statute is that they are directly redeemable for a fixed amount of fiat currency. Put differently, each of these instruments is either money in and of itself, or is directly redeemable for a fixed amount of money that is not subject to the variation of market forces. By contrast, Bitcoins have no fixed redeemable value in fiat currency. Rather, they are mere property whose value varies with the vagaries of the market.

B. Bitcoin Is Excluded from the Definition of "Financial Transaction."

The next issue is whether Bitcoins fall within the term *funds* as it is used in the statute's definition of a financial transaction. The statute at § 1956(c)(4) defines "financial transaction" as follows:

> **(4)** the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree….

Placing the word *funds* into the context provided by the definition of "financial transaction," it is clear that the term *funds* should be interpreted as fiat currency in and of itself, or something that has a fixed, definite value in terms of a fiat currency.  The statute refers to *funds* separately in the definition of "financial transaction" because each of the monetary instruments set forth in §1956(c)(5) must be physically possessed or moved to be used as payment.  However, in the modern world, money can be transferred without being physically moved, by being transmitted through wire or other similar means (*e.g*., Venmo, Zelle, and other applications).  The separate use of the word *funds* in §1956(c)(4) expands the reach of the statute to include money transfers that do not utilize physical transfer or possession of a document. It does not, however, expand the application of the statute to units of value that are not redeemable in a fixed amount of fiat currency.

The dictionary definition of the word confirms this. The Oxford Languages Dictionary defines *funds* as "a sum of money saved or made available for a particular purpose." The Oxford Languages Dictionary defines money as "a current medium of exchange in the form of coins and bank notes."  Clearly, these definitions refer to fiat, i.e., official, currency, not to property that has no fixed or specified value, such as Bitcoins.

This interpretation is confirmed by the fact that the IRS treats Bitcoins as property, not currency, i.e., money. (*See* Exhibit A, IRS Notice 2014-21)

Some courts have tried to distinguish the IRS treatment of Bitcoins on the grounds that the IRS did not purport to be amending the money laundering statute when it made that ruling. But this misses the point. The Supreme Court in *Taniguchi* instructed that an undefined term in a statute should be interpreted according to its ordinary meaning.  Surely there can be no more

7

authoritative opinion as to whether the ordinary meaning of the word *funds*, i.e., money, includes Bitcoins, than the IRS, whose very job it is to make such definitions.

In sum, Bitcoins do not constitute either monetary instruments or funds in the ordinary meaning of that word. For this reason, the indictment against Phillips fails to state a cognizable crime, is therefore insufficient, and must be dismissed in its entirety.

## Conclusion

For the foregoing reasons, the indictment must be dismissed in its entirety.

Respectfully submitted,

*Camille M. Abate*
_____
Camille M. Abate, Esq.