IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

                                                   22-CR-6058 (CJS/MWP)

    -v-

MARK ANTHONY PHILLIPS,

                Defendant.

          **GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
                **MOTION TO DISMISS THE INDICTMENT**

       The United States of America, through its attorneys, TRINI E. ROSS, United States Attorney for the Western District of New York, Kyle P. Rossi, Assistant United States Attorney, of counsel, hereby files its response to the defendant's Motion to Dismiss the Indictment, filed August 2, 2022. (Dckt. 37).

       **I.    PROCEDURAL HISTORY AND STATEMENT OF THE ISSUE**

       1.    The defendant, Mark Anthony Phillips, is indicted on five counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(3)(B) and (C). (Dckt. 29). The charges are based on five transactions with an undercover IRS Agent (the UC), during which the defendant exchanged more than $260,000.00 in U.S. Currency for Bitcoin that the defendant believed constituted proceeds of narcotics sales and identity theft.

       2.    In conducting the exchanges, the UC used an internet connected computer to transfer the Bitcoin in interstate and foreign commerce to a digital wallet controlled by the defendant. After receiving the Bitcoin, the defendant would meet the UC in person to transfer the cash. The purpose of conducting the transactions in cash was to conceal the source of the

Bitcoin and to avoid transaction reporting requirements that would result from bank or wire transfers.

3.  The defendant now moves to dismiss the Indictment for failure to state an offense. (Dckt. 37). The defendant argues that, regardless of their purpose or intent, the exchanges of Bitcoin for U.S. Currency cannot constitute money laundering under 18 U.S.C. § 1956(a)(3), because such exchanges are not "financial transactions" as defined by 18 U.S.C. § 1956(c)(4).

4.  Although not specifically stated, it appears that the defendant moves pursuant to Federal Rule of Criminal Procedure 12(b). Rule 12(b) permits a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." The defendant does not challenge, and the Court cannot consider, whether there is sufficient evidence to prove that the defendant committed the acts alleged in the Indictment or acted with the intent to commit money laundering. It is well established that an indictment that is valid on its face, cannot be dismissed on the grounds that it is based on insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Calandra*, 414 U.S. 338, 345 (1974); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989), cert. denied, 493 U.S. 1081 (1990). Such a motion can only be made after the government has presented its case at trial. *See United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992); Fed. R. Crim. P. 29(a).

5.  In considering the sufficiency of an indictment, the Court must accept as true the facts alleged in the indictment and determine only whether the indictment is "valid on its face." *Costello v. United States*, 350 U.S. 359, 363 (1956) (holding that an indictment that is

valid on its face "is enough to call for a trial of the charge on the merits"). An indictment should be upheld if it tracks the language of the statute and does "little more than state time and place in approximate terms." *United States v. Trotta*, 525 F.2d 1096, 1099 (2d Cir. 1975) (citations omitted); *United States v. Sampson,* 898 F.3d 270, 278-79 (2d Cir. 2018) (cautioning that that there is no "analogue to summary judgment" in the Federal Rules of Criminal Procedure, and warning that "resolv[ing] dispositive fact-based evidentiary disputes on Rule 12(b) motions risks invading the inviolable function of the jury in our criminal justice system").

6.   Here, the Indictment tracks the statutory language and properly alleges each of the elements under §§ 1956(a)(3)(B) and (C). Therefore, the sole issue for the Court to decide is whether the defendant's purchases of Bitcoin from the UC for cash legally constitute "financial transactions" as defined in § 1956(c)(4) under the money laundering statute.

## II.   BITCOIN AND CRYPTOCURRENCY

7.   Based on the defendant's motion, it appears that the parties share the same basic understanding of what Bitcoin is and how it is used. (Dckt. 37 at p. 2).

8.   In sum, Bitcoin is a type of virtual currency, also known as "cryptocurrency" or "digital currency." As a virtual currency, Bitcoin functions as a thing of value and medium of exchange, through which one can purchase goods and services online. Although it is generally not issued or guaranteed by governments, at least two countries, El Salvador and the Central African Republic, have approved Bitcoin as legal tender. NPR, *El Salvador Just Became The First Country To Accept Bitcoin As Legal Tender,* (September 7, 2021),

https://www.npr.org/2021/09/07/1034838909/bitcoin-el-salvador-legal-tender-official-currency-cryptocurrency (last visited August 22, 2022) (attached as Gov. Exhibit A); BBC, *Bitcoin becomes official currency in Central African Republic,* (April 27, 2022), https://www.bbc.com/news/world-africa-61248809 (last visited August 22, 2022) (Attached as Gov. Exhibit B).[1]

9.      Bitcoin's value is determined by demand within the community of Bitcoin users, among other factors.  Bitcoin, like cash, can be used to purchase a wide assortment of goods and services, and is accepted online by businesses such as Amazon, Overstock, Microsoft, AT&T, Paypal, Craigslist, and others.  *See,* Jacob Bernstein, *What Can You Actually Buy With Bitcoin?*, (N.Y. Times, Feb. 3, 2021), *available at* www.nytimes.com/2021/02/03/style/what-can-you-actually-buy-with-bitcoin.html   (last visited August 22, 2022) (Attached as Gov. Exhibit C).

10.     Bitcoin (like any unit of exchange or thing of value) can also be used for conducting illegal transactions such as narcotics sales and money laundering.  *Id.* Bitcoin has become a popular medium of exchange within various criminal circles, due to certain properties that afford users anonymity and limit the traceability of transactions. *Id.*

11.     Bitcoin transactions necessarily affect interstate and foreign commerce because all transfers are conducted through digital wallets, triggering a wide international exchange network of computing devices with internet or cellular data connections.

---

[1] The defendant's contention that Bitcoin is "not legal tender in any jurisdiction" appears to be based on outdated information. (Dckt. 37 at p. 2).

### III.  ARGUMENT

**A.  The defendant's cash for Bitcoin transactions were "financial transactions" because they affected interstate and foreign commerce and involved "monetary instruments" in the form of U.S. Currency.**

12.  The Indictment charges five counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(3)(B) and (C).  The statute provides:

> "Whoever with the intent -
>
> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
>
> (C) to avoid a transaction reporting requirement under State or Federal Law,
>
> conducts or attempts to conduct a <u>financial transaction</u> involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity,
>
> shall be fined under this title or imprisoned for not more than 20 years, or both.
>
> For purposes of this paragraph . . . the term 'represented' means any representation made by a law enforcement officer."

13.  Here, the Court must presume that the defendant (1) engaged in the charged exchanges; (2) acted with the intent required to commit money laundering; and (3) that the exchanges involved property (Bitcoin) that was represented, and believed by the defendant, to be criminal proceeds or property used to conduct or facilitate unlawful activity. These are factual, not legal allegations, and the Court must presume that they are true at this juncture. *See e.g. Costello,* 350 U.S. 359, 363; *Sampson,* 898 F.3d 270, 278-79; *Williams*, 504 U.S. 36, 54. The only element for the Court to consider is whether the charged transactions constitute "financial transactions" under § 1956(c)(4).

14. Sections 1956(c)(4)(A)(i) and (ii) define the types of "financial transactions" that apply in this case. They provide that a "financial transaction" is:

> (A) A transaction which in any way or degree affects interstate or foreign commerce
>
>   (i) Involving the movement of funds by wire or other means; or
>
>   (ii) Involving one or more monetary instruments.

15. Therefore, to prove that the defendant engaged in a "financial transaction," the government must establish three elements:

   a. First: that the defendant engaged in a <u>transaction</u>,

   b. Second: that the transaction <u>affected interstate or foreign commerce</u>; and

   c. Third: that the transaction either

      i. involved the movement of <u>funds</u>, by wire or other means, or

      ii. involved one or more <u>monetary instruments</u>.

16. The first element is easily met, because a "transaction" includes "the purchase, sale . . . transfer, delivery, or other disposition." 18 U.S.C. § 1956(c)(3). Because the exchanges here involved the purchase, sale, transfer, delivery, and disposition of Bitcoin, they constitute "transactions" under § 1956(c)(3).

17. The second element is likewise easily met as the transactions inherently "affected interstate or foreign commerce" because they involved internet transfers of Bitcoin from the UC's digital wallet to digital wallets controlled by the defendant. *See United States v. Costanzo*, 956 F.3d 1088 (9th Cir. 2020) (finding that interstate commerce element was met in

§ 1956 case which involved the transfer of Bitcoin for cash, because transfers conducted through digital wallets triggered a wide international network).

18. The third element can be established in two ways: (i) through the movement of "funds," or (ii) through the involvement of a "monetary instrument." 18 U.S.C. §§ 1956(c)(4)(A)(i) and (ii). Here, the third element is most clearly met under the § 1956(c)(4)(A)(ii) prong involving "monetary instruments," because the transactions involved the transfer of U.S. Currency from the defendant to the UC. United States Currency is, by definition, a "monetary instrument" pursuant to 18 U.S.C. § 1956(c)(5)(i).

19. By exchanging U.S. Currency for Bitcoin, the defendant engaged a transaction "involving one or more monetary instruments" and the Indictment is therefore valid on its face. 18 U.S.C. § 1956(c)(4)(A)(ii); 18 U.S.C. § 1956(c)(5)(i); 18 U.S.C. §§ 1956(a)(3)(B) and (C); *see U.S. v. Gotti,* 459 F.3d 296, 335 (2d Cir. 2006) (noting that the term transaction should be interpreted broadly and that delivery or transfer of cash to another individual is a financial transaction); *United States v. Henry*, 325 F.3d 93 (2d Cir. 2003) (both the exchange of cash for cashier's check and the purchase of a vehicle with monetary instruments are financial transactions); *United States v. Kaufmann, 985 F.2d 884, 892 n.3* (7th Cir. 1993) (transaction involving sale of a car "fit within definition of 'financial transaction' because it involved cash").

20. The defense inexplicably ignores the fact that each of the transactions involved an exchange of U.S. Currency, and instead focuses on whether Bitcoin itself can constitute a "monetary instrument." (Dckt. 37 at p. 4). Since § 1956(c)(5)(i) defines "monetary instruments" to include currency of the United States or *any other country*, it is possible that

7

Bitcoin is now a "monetary instrument" because it has been adopted by the Central African Republic and El Salvador as legal tender. *See* ¶ 8 above. However, the Court need not reach this issue because § 1956(c)(4)(A)(ii) merely requires that the transactions "*involv[e]* one or more monetary instruments" in order to constitute "financial transactions." *Id.* (emphasis added).

21. Because the Indictment alleges transactions involving monetary instruments in the form of U.S. Currency, it is valid on its face, and the defendant's motion must be denied.

**B.     The cash for Bitcoin transactions are also "financial transactions" because they involved the movement of "funds" by wire.**

22. The involvement of U.S. Currency is the most obvious reason that the transactions in this case constitute financial transactions.

23. However, even if U.S. Currency was not involved, the exchanges were still "financial transactions," because the transfer of Bitcoin constitutes "the movement of funds by wire" under § 1956(c)(4)(A)(i).

24. The district courts that have considered this issue have all held that Bitcoin constitutes "funds" under § 1956(c)(4)(A)(i). As one court noted: "federal district courts have unanimously and univocally concluded that Bitcoin constitutes money and funds" under the money laundering statutes. *United States v. Ologeanu*, No. 5:18-CR-81, 2020 WL 1676802, at *10–11 (E.D. Ky. Apr. 4, 2020), *citing United States v. Stetkiw,* No. 18-20579, 2019 WL 417404, at *2 (E.D. Mich. Feb. 1, 2019) (collecting cases and concluding that "District Courts have repeatedly found that Bitcoin constitutes 'money' and 'funds' within the meaning of 18 U.S.C.

§ 1960"); *United States v. Ulbricht*, 31 F. Supp. 3d 540 (S.D.N.Y. 2014) (holding that Bitcoin constitutes funds for § 1956 money laundering offenses); *See United States v. Murgio*, 209 F.Supp.3d 698, 706–10 (S.D.N.Y. 2016) (determining that Bitcoin constitutes "funds" under 18 U.S.C. § 1960, which prohibits "unlicensed money transmitting business[es]"—i.e., businesses that "transfer[ ] funds on behalf of the public"); *United States v. Harmon*, 474 F. Supp.3d 76 (D.D.C. 2020) (concluding that Bitcoin is money in prosecution for money laundering and unlicensed money transmitting).

25.   *United States v. Ulbricht* is one of the earliest decisions to address whether Bitcoin constitutes "funds" for the purposes of § 1956 prosecutions. 31 F. Supp. 3d 540 (S.D.N.Y. 2014). In that case, (which involved the black-market dark-website "Silk Road"), the defendant moved to dismiss the indictment on the ground the defendant's acceptance of drug proceeds in the form of Bitcoin could not constitute money laundering. *Id.* Like Phillips, Ulbricht argued that Bitcoin did not constitute "funds" under § 1956(c)(4)(A)(i) and he therefore did not conduct a "financial transaction."[2] *Id.* at 569-70. In rejecting this argument, the district court concluded that the § 1956 money laundering statute, which prohibits "financial transactions" involving property known to represent the proceeds of a crime, "is broad enough to encompass use of Bitcoins." *Id*. at 570. The Court reasoned:

> Put simply, "funds" can be used to pay for things in the colloquial sense. Bitcoins can be either used directly to pay for certain things or can act as a medium of exchange and be converted into a currency which can pay for things . . . . [t]he money laundering statute is broad enough to encompass use of Bitcoins in financial transactions. Any other reading would—in light of Bitcoins' sole raison d'etre—be nonsensical. Congress intended to prevent criminals from finding ways to wash the proceeds of criminal activity by transferring proceeds to other similar or different items that store significant

---

[2] Unlike this case, which involved the transfer of U.S. Currency, the transactions *Ulbricht* only involved the exchange of Bitcoin, and did not involve any monetary instruments.

> value. With respect to this case, the Government has alleged that Bitcoins have a value which may be expressed in dollars . . . There is no doubt that if a narcotics transaction was paid for in cash, which was later exchanged for gold, and then converted back to cash, that would constitute a money laundering transaction.

*Id. citing United States v. Day,* 700 F.3d 713, 718 (4th Cir.2012).

26.     Bitcoin transactions comfortably fit within the broad language of the definition of "funds."  Section 1956 does not specifically define the term "funds," so the term is given its ordinary meaning in applying the statute. *Ulbricht* 31 F. Supp. 3d at 570; *see Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S.Ct. 1997, 2002 (2012) ("When a term goes undefined in a statute, we give the term its ordinary meaning.").

27.     As defined in the dictionary, "funds" is a flexible term encompassing virtually any liquid form of value. Black's Law Dictionary, for example, defines "fund" as "a sum of money or other liquid assets established for a specific purpose." Black's Law Dictionary 743 (9th ed. 2009). A "liquid asset" is defined by cross-reference to "current asset," *id.* at 1014, which means "[a]n asset that is readily convertible into cash." *Id.* at 134.  As Phillips demonstrated in his interactions with the UC, Bitcoin is an asset that Phillips readily converted to cash.

28.     In *United States v. Day*, the Fourth Circuit had occasion to interpret the term "funds" in the context of § 1956. 700 F.3d 713 (4th Cir. 2012).  The defendant in that case conspired with another to convert his criminal proceeds to gold and covertly transport the gold to Mexico. *Id.* at 717-18. He was convicted, among other things, of money laundering conspiracy. *Id.* at 718. On appeal, he challenged his conviction, arguing, similarly to Phillips, that gold does not qualify as either "funds" or "monetary instruments" within the meaning of

§ 1956. *Id.* at 723. The Fourth Circuit disagreed. Upon reviewing dictionary definitions of "funds," the court construed the term to refer to any "assets of monetary value that are susceptible to ready financial use." *Id.* at 725. Thus, it concluded that "gold can constitute 'funds' . . . where it is moved as a liquid, monetary asset." *Id.* at 726. The court noted that any other reading would lead to anomalous results at odds with the "purpose and structure of the money laundering statute," explaining:

> At its core, Day's argument is that a defendant can violate the transportation money laundering provision if he moves cash or some other ordinary financial instrument with a design to conceal its source, ownership, or other listed attribute, but not if he takes the further deceitful step of first converting the cash into the more difficult-to-trace financial asset of gold. To accept Day's argument would turn the transportation money laundering statute on its head, creating an odd safe harbor for criminals to transport and conceal their criminal proceeds where they engage in more deceit and concealment, not less. We do not think Congress could have intended such a result . . . .

*Id.*

29.     The Fourth Circuit's holding in *Day* readily extends to Bitcoin. As with gold, Bitcoin is an "asset[] of monetary value that [is] susceptible to ready financial use." *Day*, 700 F.2d at 726. As demonstrated by the defendant's actions in this case, Bitcoin can easily be purchased in exchange for ordinary currency and then used to conduct financial transactions. *See SEC v. Shavers*, 13 Civ. 416, 2013 WL 4028182, at *2 (E.D. Tex. Aug. 6, 2013) ("It is clear that Bitcoin can be used as money. It can be used to purchase goods or services, and . . . used to pay for individual living expenses . . . [I]t can also be exchanged for conventional currencies").

30.     Indeed, the monetary value of Bitcoin is not lost on the defendant, who gave the UC more than $260,000.00 in cash for approximately 7.85 Bitcoins. (Dckt. 29).

31.     The defendant fails to point to any case law or any text or legislative history of § 1956 in support of his assertion that Bitcoin does not qualify as "funds" within the meaning of the statute. Instead, he relies solely on guidance documents issued by the Internal Revenue Service ("IRS Guidance"). (Dckt. 37, Ex. A).

32.     These IRS Guidance documents – which appear to be the same that were relied on by the defendant in *Ulbricht* - have nothing to do with the meaning of "funds" as used in § 1956. Like the court in *Ulbricht*, the Court should disregard them. *See Ulbricht,* 31 F. Supp. 3d at 569 (noting that "neither the IRS nor FinCEN has addressed the questions of whether a 'financial' transaction can occur with Bitcoin. This Court refers back to the money laundering statute itself and case law interpreting the statute").

33.     The IRS Guidance addresses only the tax consequences of virtual currency transactions. In that regard, it advises that virtual currencies such as Bitcoin is "not treated as currency that could generate foreign currency gain or loss for U.S. federal tax purposes," and that they are instead governed by the "[g]eneral tax principles applicable to property transactions." (Dckt. 37, Ex. A).

34.     Notwithstanding the narrow focus and careful language of the IRS Guidance, the defendant boldly asserts that its interpretation that Bitcoin does not constitute funds, is "confirmed by the fact that the IRS treats Bitcoin as property, not currency, i.e. money." (Dckt. 37 at p. 7). IRS has made no such declaration whatsoever. Like the Court in *Ulbricht*, this Court should place no weight on the IRS Guidance and instead turn to the plain meaning of the statute and case law interpreting the statute, which clearly and logically concludes that Bitcoin constitutes funds under § 1956(c)(4)(A)(i). *Ulbricht,* 31 F. Supp. 3d at 569.

35.     The government is aware of only one opinion that held that Bitcoin did not constitute "funds" within the meaning of § 1956: *United States v. Petix*, No. 15-CR-227A, 2016 WL 7017919 (W.D.N.Y. Dec. 1, 2016). That case, which is the lone dissenting voice on this issue, is a magistrate judge's report and recommendation that was never adopted by the district judge and was mooted by subsequent developments in the case (including a guilty plea to the § 1960 charge). The overwhelming majority of courts that have considered this issue have adopted *Ulbricht's* reasoning, and many have expressly rejected *Petix's* reasoning. *See Harmon*, 474 F. Supp. 3d at 90; *Stetkiw*, 2019 WL 417404, at *1–2; *United States v. Mansy*, No. 2:15-cr-198, 2017 WL 9672554, at *1 (D. Me. May 11, 2017) (collecting cases and announcing that "[t]he Court . . . adopts the persuasive analysis of the majority of the district courts that have recently addressed this question").

36.     In short, Bitcoin is not exempt from the money laundering laws. It falls well within the broad sweep of § 1956's "financial transaction" definition, as it constitutes one of many potential types of "funds" as considered by § 1956(c)(4)(A)(i). As explained in *Day*, any contrary holding would cut a gaping hole in § 1956 and create an obvious incentive for criminals to use Bitcoin to launder the proceeds of their illegal activity. Accordingly, the motion to dismiss should be denied.

## IV.     CONCLUSION

37.     For the reasons specified herein, the defendant's motion for dismissal for failure to state an offense must be denied.

DATED: Rochester, New York
August 22, 2022

            TRINI E. ROSS
            United States Attorney

       By: s/KYLE P. ROSSI
           Assistant United States Attorney
           United States Attorney's Office
           Western District of New York
           100 State Street, Suite 500
           Rochester, New York 14614
           585/263-6760

To: Camille Abate, Esq.
   Attorney for Defendant
   *(via ECF)*