UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

UNITED STATES OF AMERICA                       :

   - against -                                              :       22 Cr. 06058-CJS-MWP

MARK ANTHONY PHILLIPS,                         :       **REPLY MEMORANDUM**

   Defendant.                                             :

------------------------------------------------------------ x

Defendant Mark Anthony Phillips, through his attorney, Camille M. Abate, hereby replies to the Government's Memorandum in Opposition to Defendant's Motion to Dismiss (hereinafter "Opposition").

I.

**CONTRARY TO THE GOVERNMENT'S ARGUMENT, THE CASH PHILLIPS USED TO BUY THE BITCOIN CANNOT BE THE BASIS OF THE MONEY LAUNDERING CHARGES, BECAUSE THE INDICTMENT DOES NOT ALLEGE THAT PHILLIPS'S CASH WAS EITHER THE ACTUAL PROCEEDS OF AN ILLEGAL TRANSACTION, OR WAS REPRESENTED TO BE THE PROCEEDS OF SUCH A TRANSACTION**

The Government argues that the indictment is sufficient because the cash Phillips used to purchase the Bitcoin was itself a monetary instrument. But this argument fails because, to trigger liability under 18 U.S.C. §1956(3), the indictment must allege that the *cash involved in the transaction* was the monetary instrument that constituted the proceeds of illegal activity. The indictment does not allege, and the government does not claim, that the cash Phillips traded for the Bitcoin was in fact – or was ever represented to be – the proceeds of an illegal activity. To the contrary, only the Bitcoin was represented to be the proceeds of an illegal activity. Accordingly, the status of the Bitcoin goes to the heart of the indictment's sufficiency.

The indictment alleges that Phillips violated 18 U.S.C. §1956(3). That statute reads, in pertinent part:

**(3)** Whoever, with the intent—

**(A)** to promote the carrying on of specified unlawful activity;

**(B)** to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

**(C)** to avoid a transaction reporting requirement under State or Federal law,

conducts or attempts to conduct a financial transaction involving *property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity*, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section. (Emphasis supplied.)

Thus, for a financial transaction to be the basis of a money laundering charge under 18 U.S.C. §1956(3), it must involve property that either actually is or is represented to be the proceeds of unlawful activity. "The term 'involved in' includes 'the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.'" *United States v. Coffman*, 859 F. Supp. 2d 871, 875 (E.D. Ky. 2012)(*citing United States v. McGauley*, 279 F.3d 62 (1st Cir.2002)). The cash Phillips used to obtain the undercover's Bitcoin does not fall into this category. The indictment does not allege, and the government does not claim, that Phillips's cash was the proceeds of an unlawful activity. The indictment does not allege, and the government does not claim, that Phillips engaged in illegal activity before the dates that these transactions occurred. Accordingly, *the clean cash* Phillips used to purchase the Bitcoin could not possibly trigger 18 U.S.C. §1956 (a)(3). For the Bitcoin to trigger the statute, it must be the property that was received in the illegal transaction.

The total lack of a nexus between Phillips and the alleged unlawful activity that generated the proceeds, distinguishes this case from every case that the government has cited in its Opposition, and from virtually every case that counsel has been able to find. In nearly all the prior cases, the defendant was intimately involved in the illegal activity that generated the monetary proceeds, and therefore needed to launder the proceeds he received. In some cases, the defendant received money that he knew had been the proceeds of illegal activity. In most of the cases, the defendant was himself the person who transferred the ill-gotten cash to another in an effort to hide the cash's provenance!

Here, the only cash that Phillips transferred was clean cash that did not need to be laundered. Here, Philips did not receive money, unless one considers the Bitcoin itself to constitute the funds or money instrument he received. Accordingly, the status of the Bitcoin is crucial to the sufficiency of the indictment.  If it is not considered either funds or a monetary instrument, then the indictment must fail as a matter of law.

### CONTRARY TO THE GOVERNMENT'S ARGUMENT,  BITCOIN DOES NOT FALL WITHIN THE TERM "FUNDS" AS SET FORTH IN 18 U.S.C. §1956(c)(4)(A)(i)

It is well settled that when a term goes undefined in a statute, it is given its ordinary meaning. *Taniguchi v. Kan Pacific Saipan,* 566 U.S. 560, 566 (2012) (citations omitted). The government concedes that §1956 contains no definition of the term *funds*, and that the term *funds* must be given its ordinary meaning.  (Government's Memorandum in Opposition, at page 10.) *United States v. Day* 700 F.3d 713 (2012), discussed below, is inapposite on the issue of whether Bitcoin should be considered funds because it dealt with the status of gold under §1956, and not the status of Bitcoins. While it is true that most of the District Court judges that have considered the issue have concluded that the term funds in 1956(c)(4)(A)(I) does include Bitcoin, Phillips

urges the court to adopt the reasoning of the court in *United States v. Petix,* 2016 WL 7017919 (W.D.NY. 2016) and dismiss the indictment.

In *Petix,* Magistrate Judge Scott makes a compelling case for why Bitcoin should not be considered a species of funds. Using the Supreme Court's definition of *funds*, i.e., "'sum[s] of money ... set aside for a specific purpose,'" *Clark v. Rameker*, ___ U.S. ____, 134 S. Ct. 2242, 2246 (2014), the court engaged in an extensive analysis of how the term money is used in various statutes, and concluded that the one common factor in all these uses was that it was issued or guaranteed by a sovereign power:

> What all of the above examples have in common, though, is the involvement of a sovereign. Across all of the legal authorities that make some reference to money, and despite new technologies that have emerged over the years within the United States monetary system, there has been a consistent understanding that money is not just any financial instrument or medium of exchange that people can devise on their own. "Money," in its common use, is some kind of financial instrument or medium of exchange that is assessed value, made uniform, regulated, and protected *by sovereign power*. …
>
> Ordinary people in everyday life know this intuitively; the average person who hears the term "money" will think of government-issued "dollars" or instruments, like checks, money orders, credit cards, or notes, directly connected to dollars. *Cf. Nix v. Hedden*, 149 U.S. 304, 307 (1893) (giving "the common language of the people" priority over scientific definitions, for purposes of statutory construction). The Supreme Court years ago expressed the ordinary understanding of money as a regulated instrument when, quoting Blackstone, it wrote that "[t]he coining of money is the act of the sovereign power, *that its value may be known on inspection.*" *Petix*, *supra*, at *4. (Emphasis added.)

The court ultimately held that the ordinary meaning of funds did not include Bitcoin because "the whole point of Bitcoin is to escape any entanglement with sovereign governments." *Id.* at 5.

It is significant that the government fails to explain how the term *funds* could have been meant to include Bitcoin when Bitcoin was not actually created until many years after the statute was passed. *Taniguchi v. Kan Pacific Saipan,* 566 U.S. 560, 566 (2012) not only holds that an

4

undefined term in a statute should be given its ordinary meaning, it strongly suggests that its ordinary meaning should be derived from how it was used when the statute was passed. This makes sense, since the interpretation of a statute involves trying to decide what Congress meant when it passed the statute. Obviously, nobody interpreted the word *funds* to include Bitcoin (or any form of cryptocurrency) in 1986 when the statute was passed, since cryptocurrency did not exist at that time.

The Government's citation to *Day*, *supra*, is unavailing because the issue before the *Day* court was entirely different than the issue before this Court. *Day* dealt with whether the term *funds* included gold, not whether it included Bitcoin. The differences between gold and Bitcoin are so dramatic that the *Day* holding is irrelevant to whether Bitcoin can be considered a species of funds.

Unlike Bitcoin, gold has been associated with money, i.e., funds, from long before the money laundering statute was passed. Indeed, for many years, United States was on the gold standard, which meant that at least in theory, a dollar of U.S. currency was redeemable for a fixed quantity of gold.[1] Historically, gold has often been used to make coins. Even today, it is a common investment strategy to keep a quantity of gold as a hedge against the volatility of other forms of money. Accordingly, at the time that the money laundering statute was passed, there can be no doubt that the term *funds* included gold.

In contrast, not only did Bitcoin not exist when the money laundering statute was passed, but it has no intrinsic value *vis a vis* fiat currency and is not universally accepted as either

---

[1] Gold as a precious metal has been part of the monetary system in many countries for hundreds of years. The "gold standard" is a monetary system whereby a country's currency or paper money has a value directly linked to gold. With the gold standard, countries agreed to convert paper money into a fixed amount of gold. A country that uses the gold standard sets a fixed price for gold and buys and sells gold at that price. *See* What Is the Gold Standard? - investopediahttps://www.investopedia.com › ask › answers › gold-stan.

currency or as a holder of value. For this reason, the government's claim that, because of *Day*, Bitcoin should be considered "funds" fails. Bitcoin is simply not comparable to gold.

Furthermore, Bitcoin itself is so radically different in kind from all the other items that might be included in the category of "monetary instruments" or "funds" that it is simply too large a stretch to say that the term *funds* is broad enough to include it. Unlike other instruments usually thought of as funds, Bitcoin is entirely a privately created currency, with no fixed value, and has no reference to government-supported fiat currency.

For the reasons set forth above, the court should find that Bitcoin is not incorporated into the term *funds* as used in 18 U.S.C. §1956(c)(4)(A)(i) and dismiss the indictment.

Respectfully submitted,

*Camille M. Abate*

Camille M. Abate, Esq.
Attorney for Mark Anthony Phillips