UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| - against - | : | 22 Cr. 06058-CJS-MWP |
| MARK ANTHONY PHILLIPS, | : | **SUPPLEMENTAL MEMORANDUM** |
| Defendant. | : | |

------------------------------------------------------------- x

Defendant Mark Anthony Phillips, through his attorney, Camille M. Abate, hereby submits this Supplemental Memorandum to provide an analysis of the recent Sixth Circuit case, *United States v. Iossifov*, 45 F.4th 899 (2022).

The Charges in *Iossifov*

The two charges against defendant Iossifov were conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO) and a money laundering conspiracy under the money laundering statute. As the court there stated: "Defendant Iossifov was charged with conspiracy to launder money pursuant to 18 U.S.C. § 1956(h), meaning that the government was tasked with showing that he agreed to participate in a scheme to conduct unlawful financial transactions."

Because Iossifov was charged with conspiracy, the government was only required to prove that (1) a conspiracy existed, and (2) that Iossifov knowingly and voluntarily joined the conspiracy. Here, as stated in the indictment, the government must prove that defendant Phillips conducted financial transactions with property he knew to be the proceeds of unlawful activity "with the intent to conceal and disguise the nature, location, source, ownership and control of the

property believed to be the proceeds of said unlawful activity, and to avoid a transaction reporting requirement."

The specific intent identified in the money laundering statute, a requirement for the government to prove here, was not an element in the *Iossifov* case. And of course, the other major difference is that in *Iossifov*, there was an actual conspiracy taking place, with documented unlawful activities in the form of defrauding American citizens.

Nevertheless, the case does identify a scheme to defraud whereby cash proceeds of fraudulent activity were converted into Bitcoin. The fraudsters then used the defendant's business to liquidate the Bitcoin and turn it back into cash.[1] This is clearly on a par with what is alleged to have happened here, had this not been a sting operation. Thus, Iossifov's argument that the money laundering statute does not reach his conduct because Bitcoin is not currency and does not qualify as funds or a monetary instrument is the same argument that the defense makes in the instant case, which the Sixth Circuit rejected.

As will be discussed below, it is Phillips' position that the Sixth Circuit's analysis is wrong, and should not be adopted by this Court, because it clearly does not understand what cryptocurrency is and how it functions. The job of classifying and regulating cryptocurrency should be left to Congress.

The Sixth Circuit's Argument

The Sixth Circuit is the only appellate court to reach the issue of whether Bitcoin fits under the money laundering statute. Its argument boils down to one simple idea: that Bitcoin is just another form of cash. After dismissing as irrelevant the IRS interpretation of cryptocurrency

---

[1] A major factual difference is that, according to the court in *Iossifov*, the defendant there never asked for identification or any type of "know your customer" documentation. Here, there are at least three instances in the tape recordings where Phillips specifically asked the agent to provide identifying documents, which the agent ignored.

as property, the court relied upon two lower court decisions in framing its definition. But those lower courts had no superior insight; they merely used a dictionary. The Sixth Circuit defined *funds* as "available pecuniary resources," citing a district court case that took the definition from Webster's Dictionary. *See United States v. Murgio*, 209 F.Supp.3d 698, 707 (SDNY 2016). But in that same dictionary, "pecuniary" is defined as "consisting of or measured in money." https://www.merriam-webster.com/dictionary/pecuniary.

The court then cited another district court case, *United States v. Ulbricht*, 31 F. Supp. 3d 540 (SDNY 2014) that in turn took its definition from Cambridge Dictionaries Online.[2] However, the Cambridge Dictionary defined funds as "money, often money for a specific purpose" and hence did not extend the definition of funds past money itself, as the Sixth Circuit is doing here. The *Ulbricht* court made the self-evident comment that money "is an object used to buy things." *Id*. at 570.

The Sixth Circuit, determined to make the money laundering statute fit, took the self-evident observation about money from *Ulbricht* and left behind the dictionary definition. In so doing, it also left behind the mandate of the Supreme Court in *Taniguchi v. Kan Pacific Saipan,* 566 U.S. 560, 566 (2012) that words should be given their ordinary meaning. The court asserted, without any valid precedent, that Bitcoin is money because "Bitcoin is often used to pay for things, and it may sometimes be used as a medium of exchange that is subsequently converted to currency to pay for things." The term, "medium of exchange" can refer to anything, however. By the Sixth Circuit's reasoning, a valuable Mickey Mantle rookie year baseball card would

---

[2] *Cambridge Dictionaries Online,* http://dictionary. cambridge.org/us/dictionary/american-english/funds?q =funds (last visited July 3, 2014).

3

constitute currency if it were used as a "medium of exchange" to "pay for things."[3]  What it pays for does not matter – it could be exchanged for a Babe Ruth baseball card and easily fit into the *Iossifov* analysis. Thus, according to the Sixth Circuit, Bitcoin is the same as money or funds because it is sometimes used to pay for things, and that fits it within the money laundering statute. 45 F.4th at 913-914. This is an extraordinary meaning for the word, "funds."

What the Sixth Circuit failed to realize is, based on how Bitcoin and other cryptocurrencies have developed, this analysis ignores the particular and peculiar features of Bitcoin that have caused the IRS to classify it as property and not currency.

<u>Bitcoin is a Commodity not a Currency</u>

Bitcoin and all the rest of the major crypto tokens are widely considered "risk-assets." Matt Turner of Bloomberg does a good job explaining why Bitcoin and other cryptocurrencies[4] are among the riskiest of risk assets that one could hold.  *See* Turner, *Crypto Stocks Show Why They're Among the Riskiest of Risk Assets*, https://www.bloomberg.com/news/articles/2022-06-26/crypto-stocks-show-why-they-re-among-the-riskiest-of-risk-assets?leadSource=uverify%20wall. Claiming that Bitcoin or any other cryptocurrency is an actual "currency" is inherently problematic. If the only criteria for Bitcoin being a currency is that one can use it to pay for things, then any physical or digital item could be labeled a currency. Equities are considered risk assets as well, and yet it is doubtful that one would try and make the argument that they are currencies.

---

[3] Any item, if it is wanted by another, can be used as a medium of exchange – such as Native Americans getting paid for Manhattan Island by accepting beads.
[4] There are thousands of cryptocurrencies in existence.

Commodities such as oil, food, gold, silver, and gas, to name a few, also have a United States Dollars (USD) value attached to them similar to Bitcoin, and yet it is unlikely that a court would label any of these as "currency" in 2022. They are accepted as property.

Bitcoin is frequently compared to gold because its supply is finite. *See* Fox, *Here's How Bitcoin Stacks Up To Gold As A Store Of Value Based On 8 Key Factors, According To Jpmorgan*, June 26, 2022, https://markets.businessinsider.com/news/commodities/Bitcoin-versus-gold-store-of-value-comparison-crypto-Bitcoin-jpmorgan-2022. This Business Insider article compares the two as "stores of value." The article makes clear that a store of value does not turn an asset or commodity into currency; quite the reverse! The value comes from how these assets are priced in USD at any given moment. The volatility of Bitcoin and other major crypto coins clearly establish that Bitcoin is not a currency but a commodity.

As an example of this, on February 22nd, 2021, the price of Bitcoin fell from $58,000 to $47,700 in just over 19 hours. https://www.coindesk.com/price/Bitcoin/. The price then bounced back 13% in the next 16 minutes. That is volatility on a scale that even the riskiest of markets rarely see. Yet, that level of volatility has happened several times in the history of Bitcoin and other cryptocurrencies. It is at a crisis level today. *See, e.g.*, Sandor and Genc, *The Fall of Terra: A Timeline of the Meteoric Rise and Crash of UST and Luna*, August 19, 2022, https://www.coindesk.com/learn/the-fall-of-terra-a-timeline-of-the-meteoric-rise-and-crash-of-ust-and-luna/.

There is no federal mandate to back any cryptocurrency, no matter how many billions of dollars are lost by investors. This level of volatility makes it nearly impossible for Bitcoin to be

5

considered a currency in its current state.[5] This is why the IRS has evaluated the situation and labeled cryptocurrency as property.

Of the authorities who have weighed in on the matter, it is the IRS that is the most authoritative when it comes to identifying and evaluating items of value, be they cash or other assets. There are several memoranda from the Office of Chief Counsel for the Internal Revenue Service that relate the history of cryptocurrency and the rationale behind classifying Bitcoin and other cryptocurrencies as property. See, for example, Memorandum from the Office of Chief Counsel, 6/18/2021: "Virtual currency is a digital representation of value that functions as a medium of exchange, a unit of account, or a *store of value* other than a representation of the U.S. dollar or a foreign currency. Notice 2014-21; Rev. Rul. 2019-24. Virtual currency that has an equivalent value in real currency, or acts as a substitute for real currency, such as Bitcoin, is referred to as "convertible" virtual currency and is considered property for federal income tax purposes. Notice 2014-21. Accordingly, general tax principles applicable to property transactions apply to transactions involving convertible virtual currency." (Emphasis added.)

Leave Legislating to Congress

Congress is about to act on cryptocurrency precisely because of its extreme volatility, especially in 2022. *See* Huseein and Sweet, *New Cryptocurrency Oversight Legislation Arrives as Industry Shakes*, Aug. 3, 2022, https://www.pbs.org/newshour/economy/new-cryptocurrency-oversight-legislation-arrives-as-industry-shakes (emphasis added):

> The regulations offered by Senate Agriculture Committee chair Debbie Stabenow and top Republican member John Boozman would authorize the Commodities Futures Trading Commission to be the default regulator for cryptocurrencies….

---

[5] Imagine telling a neighbor they should convert all their cash to BITCOIN and risk losing 20% in value on any given day or receiving payment in BITCOIN only to have it decline by 5% before you can even convert it to currency.

>This year, crypto investors have seen prices plunge and companies crater with fortunes and jobs disappearing overnight, and some firms have been accused by federal regulators of running an illegal securities exchange. **Bitcoin, the largest digital asset, trades at a fraction of its all-time high, down from more than $68,000 in November 2021 to about $23,000 on Wednesday.** Industry leaders have referred to this period as a "crypto winter," and lawmakers have been desperate to implement stringent oversight.

Characterizing and regulating the use of Bitcoin and other cryptocurrencies is the purview of the Legislative branch, not the Judicial branch. Congress has not acted yet on the regulation of cryptocurrency. It appears they are about to, and it should be left to America's representatives.

Conclusion

The Sixth Circuit, in its haste to include Bitcoin in the criminal law scheme, did not consider the reality of cryptocurrency and how it operates. Cryptocurrency is fundamentally different from any fiat currency because there is no legal requirement that it be accepted as tender. Because it is not a fiat currency it has no intrinsic value. Because it is a private commodity it is not backed by the United States. Its extreme volatility prevents stable expressions of value. The job of deciding whether it is equivalent to money or funds, or is a commodity, is up to Congress. This Court should not compound the Sixth Circuit's error. The indictment should be dismissed.

>Respectfully submitted,
>
>*Camille M. Abate*
>
>Camille M. Abate, Esq.
>Attorney for Mark Anthony Phillips