UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                              Plaintiff,

            REPORT & RECOMMENDATION

            22-CR-6058CJS

      v.

MARK PHILLIPS,

                              Defendant.
_____

## PRELIMINARY STATEMENT

        By Order of Hon. Charles J. Siragusa, United States District Judge, dated May 3, 2022, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 31).

        By indictment returned on May 3, 2022, defendant Mark Phillips ("Phillips") is charged with five counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(3)(B) and (C). (Docket # 29). Currently pending before this Court for report and recommendation is Phillips's motion to dismiss the indictment. (Docket ## 37, 46, 54). For the reasons discussed below, I recommend that the district court deny Phillips's motion to dismiss.

## REPORT & RECOMMENDATION

        The charges against Phillips stem from five separate transactions he allegedly engaged in with an individual he later learned was an Internal Revenue Service undercover agent (the "UCA") in which Phillips accepted Bitcoins from the agent in exchange for United States currency. (Docket ## 1 at ¶¶ 9, 11, 21; 29 at 1-2). According to the complaint, on November 19,

2020, a different undercover agent responded to an advertisement posted on Craigslist for buying and selling Bitcoin and other virtual currencies. (Docket # 1 at 22). Using the "WhatsApp" application service, the UCA thereafter communicated with an individual who identified himself as "Mark Anthony" and arranged to meet him on November 24, 2020. (*Id.* at ¶ 23). On that day, the UCA met with that individual, who was later identified as Phillips, and told him that he wanted to exchange Bitcoin for cash so that the Bitcoin would appear "clean" and that he wanted to remain anonymous. (*Id.* at ¶¶ 24, 26, 28). Phillips assured the UCA that he would be able to keep the Bitcoin exchanges anonymous if cash were used. (*Id.* at ¶ 31). On December 6, 2020, the UCA transferred one Bitcoin from a digital wallet to a digital wallet address provided by Phillips. (*Id.*). Phillips and the UCA met the following day, and Phillips provided the UCA a box containing $17,840 in cash. (*Id.* at ¶¶ 32-33). Phillips confirmed that he would not file any reports of the transaction. (*Id.* at ¶ 35).

According to the complaint, the UCA transferred Bitcoin to Phillips on four subsequent occasions between December 2020 and April 2021. (*Id.* at ¶¶ 38, 41, 49, 56). Within a few days after each transfer, Phillips and the UCA met in person, and Phillips provided cash to the UCA. (*Id.* at ¶¶ 39-40, 42, 50, 57). The complaint alleges that during their communications the UCA informed Phillips that the Bitcoin was the proceeds of illegal activity, including "I.D.'s," "hack[ing]," and "sell[ing] cocaine." (*Id.* at ¶¶ 34, 44, 45, 53, 54, 60, 63, 64). The indictment charges each of the five transactions as a substantive money laundering violation of Section 1956(a)(3)(B) and (C). (Docket # 29).

Phillips moves to dismiss the indictment on the grounds that it fails to charge a crime. (Docket # 37). According to Phillips, the alleged Bitcoin exchanges do not fall within the scope of 18 U.S.C. § 1956, rendering the indictment facially insufficient. (*Id.*).

Section 1956(a)(3) of Title 18 of the United States Code provides:

Whoever, with the intent –

* * *

(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

(C) to avoid a transaction reporting requirement under State or Federal law,

> conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity . . . shall be fined under this title or imprisoned for not more than 20 years, or both.

18 U.S.C. §§ 1956(a)(3)(B) and (C).

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a party may move to dismiss for a "defect in the indictment or information, including: . . . failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v); *see United States v. Laurent*, 861 F. Supp. 2d 71, 109 (E.D.N.Y. 2011) ("[a] trial court may dismiss an indictment that does not state an offense under the charged statute"). Challenges to the sufficiency of an indictment "often turn on the meaning of a statutory term," *United States v. Laurent*, 861 F. Supp. 2d at 109, in this case, the term "financial transaction." Section 1956 defines "financial transaction" to mean:

> (A) a transaction which in any way or degree affects interstate or foreign commerce
>
> > (i) involving the movement of funds by wire or other means or
> >
> > (ii) involving one or more monetary instruments, or
> >
> > (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or

> (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

18 U.S.C. § 1956(c)(4).

The parties agree that the Bitcoin-for-cash exchanges alleged in the indictment did not involve either the transfer of title to property or the use of a financial institution. (Docket ## 37, 42). Phillips contends that they also fall outside the statutory definition of "financial transactions" because Bitcoin cannot be considered either "funds" within the meaning of subsection (i) or a "monetary instrument" within subsection (ii). (Docket # 37 at 4-5). The government disagrees, maintaining that the exchanges involved at least one monetary instrument[1] – United States currency – and involved the transfer of "funds" – Bitcoin virtual currency. (Docket # 42 at ¶¶ 19-21, 23).

Bitcoin is a type of virtual currency, commonly referred to as "cryptocurrency" or "digital currency." (Docket ## 37 at 2; 42 at ¶ 8). According to the parties, Bitcoin is a digital representation of value or an electronic unit that can be traded and functions as a medium of exchange. (Docket ## 1 at ¶ 7; 37 at 2). Bitcoin can be exchanged for fiat currency or other convertible virtual currencies based upon a fluctuating exchange rate. (Docket ## 1 at ¶ 10; 37 at 2). Stored in "digital wallets" that "contain a [B]itcoin address and a QR code with the public and private key embedded in the code," Bitcoin can be transferred through digital transactions in which the Bitcoin is sent to and received from Bitcoin addresses. (Docket # 1 at ¶¶ 11, 12). To effectuate a transfer, an individual must have the unique private key to the Bitcoin address in order to authorize its transfer to another address. (*Id.*). Bitcoin is not government-issued or

---

[1] Section 1956 defines "monetary instruments" as "(i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery." 18 U.S.C. § 1956(c)(5).

4

government-guaranteed, although it apparently has been recognized as legal tender in El Salvador and the Central African Republic. (Docket ## 37 at 2; 42 at ¶ 8). According to Phillips, Bitcoin was created in 2009. (Docket # 37 at 2).

The parties agree that the term "funds," which is not statutorily defined, must be given its ordinary meaning. (Docket ## 37 at 5; 42 at ¶ 26) (citing *Taniguchi v. Kan Pac. Saipan*, 566 U.S. 560, 566 (2012)). Virtually every federal court to consider this issue has determined that the ordinary meaning of "funds" in the federal money laundering statutes encompasses Bitcoin. *See*, *e.g.*, *United States v. Iossifov*, 45 F.4th 899, 914 (6th Cir. 2022) ("[defendant's] contention that Bitcoin does not fall under the money laundering statute is unavailing"); *United States v. Ologeanu*, 2020 WL 1676802, *11 (E.D. Ky. 2020) ("the federal district courts have unanimously and univocally concluded that Bitcoin constitutes money and funds[;] . . . [t]he [c]ourt joins the chorus and rejects [defendant's] contrary theory") (internal quotations omitted); *United States v. Stetkiw*, 2019 WL 417404, *2 (E.D. Mich. 2019) ("[t]he [c]ourt . . . finds that Bitcoin qualifies as 'money' and 'funds' under § 1960"); *United States v. Mansy*, 2017 WL 9672554, *1 (D. Me. 2017) (holding that Bitcoin constitutes "money" or "funds" within the meaning of Section 1960); *United States v. Murgio*, 209 F. Supp. 3d 698, 710 (S.D.N.Y. 2016) ("applying § 1960 to Bitcoin is consistent with the statute's plain meaning[;] Bitcoins are 'funds'"); *United States v. Budovsky*, 2015 WL 5602853, *14 (S.D.N.Y. 2015) (holding that virtual currency constitutes "funds" within the meaning of Sections 1956 and 1960); *United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014) ("Bitcoin clearly qualifies as 'money' or 'funds' under [the] plain meaning definitions[;] Bitcoin can be easily purchased in exchange for ordinary currency, acts as a denominator of value, and is used to conduct financial transactions"); *United States v. Ulbricht*, 31 F. Supp. 3d 540, 570 (S.D.N.Y.

5

2014) ("[t]he money laundering statute is broad enough to encompass use of Bitcoins in financial transactions[;] [a]ny other reading would – in light of Bitcoins' sole raison d'etre – be nonsensical. *But see United States v. Petix*, 2016 WL 7017919, \*6 (W.D.N.Y. 2016) ("[b]ecause Bitcoin does not fit an ordinary understanding of the term 'money,' [defendant] cannot have violated Section 1960 in its current form").

Often relying upon common dictionary definitions, these courts have concluded that the term "funds" ordinarily means an available pecuniary resource or an accepted medium of exchange that can be used to pay for things. *See United States v. Ologeanu*, 2020 WL 1676802 at \*10 ("funds" means "money or other assets, such as stocks, bonds, or working capital, available to pay debts, expenses and the like" and "a supply of money or pecuniary resources, as for some purpose") (citing Black's Law Dictionary (11th ed. 2019) and Webster's Unabridged Dictionary (2001 ed.)) (internal quotations and brackets omitted); *United States v. Murgio*, 209 F. Supp. 3d at 707 ("[t]he ordinary meaning of 'funds' . . . is 'available pecuniary resources[,]' [and] '[p]ecuniary' is defined as 'taking the form of or consisting of money'[;] '[m]oney,' in turn is defined as 'something generally accepted as a medium of exchange, a measure of value, or a means of payment'") (citing Webster's Third New International Dictionary 921 (2002)); *United States v. Faiella*, 39 F. Supp. 3d at 545 ("'money' in ordinary parlance means 'something generally accepted as a medium of exchange, a measure of value, or a means of payment'[;] . . . 'funds' [means] 'available money' or 'an amount of something that is available for use: a supply of something'") (citing Merriam-Webster Online, http://www.merriam-webster.com/dictionary)); *United States v. Ulbricht*, 31 F. Supp. 3d at 570 ("'funds' are defined as 'money, often money for a specific purpose'[;] . . . 'money' is an object used to buy things") (citing *Cambridge Dictionaries Online*, http://dictionary.cambridge.org/us/dictionary/american-english)). Because

6

Bitcoin can be used to purchase things directly or can act as a medium of exchange that can easily be converted to ordinary currency in order to purchase things, courts have repeatedly concluded that Bitcoin constitutes "funds" as used in the money laundering statutes. *See Murgio*, 209 F. Supp. 3d at 707 ("Bitcoins can be accepted as a payment for goods and services or bought directly from an exchange with a bank account[;] . . . [t]hey therefore function as pecuniary resources and are used as a medium of exchange and a means of payment") (internal quotations and brackets omitted); *Faiella*, 39 F. Supp. 3d at 545 ("Bitcoin can be easily purchased in exchange for ordinary currency, acts as a denominator of value, and is used to conduct financial transactions"); *Ulbricht*, 31 F. Supp. 3d at 570 ("Bitcoins can be either used directly to pay for certain things or can act as a medium of exchange and be converted into a currency which can pay for things").

Indeed, the Sixth Circuit, the first federal appellate court to address the question whether Bitcoin falls within the meaning of "funds," recently rejected the contention that it does not; the factual allegations in *Iossifov* are strikingly similar to the allegations at issue in this case.[2] *See United States v. Iossifov*, 45 F.4th 899, 914 (6th Cir. 2022). In *Iossifov*, the defendant, like Phillips, was charged with violating Section 1956 based upon his exchanges of Bitcoin for fiat currency knowing that the Bitcoin had been obtained as a result of unlawful activity.[3] *See id.* at 908-909. He maintained that the Bitcoin transactions fell outside the scope of Section 1956 because Bitcoin "does not qualify as funds or a monetary instrument." *Id.* at 913. The Sixth Circuit held, to the contrary, that Bitcoin qualifies as "funds" because it "is often

---

[2] During oral argument on Phillips's motion, the Court granted the parties' request to submit supplemental briefs addressing *Iossifov*, which was decided after Phillips filed his pending motion to dismiss. (Docket ## 51, 54, 55). The Court has considered those supplemental submissions.

[3] Unlike Phillips, who is charged with substantive money laundering in violation of 18 U.S.C. §§ 1956(a)(3)(B) and (C), the defendant in *Iossifov* was charged with conspiracy to launder money in violation of 18 U.S.C. § 1956(h). *Id.* at 910.

7

used [to] pay for things, and it may sometimes be used as a medium of exchange that is subsequently converted to currency to pay for things." *Id.* at 914.

Although Phillips concedes that the conduct at issue in *Iossifov* is "clearly on a par with what is alleged to have happened, had this [case] not been a sting operation"[4] and that the Sixth Circuit squarely rejected his position, he nonetheless urges this Court to disregard *Iossifov* on the grounds that the Sixth Circuit did "not understand what cryptocurrency is and how it functions." (Docket # 54 at 2). Relying primarily on an IRS Notice providing that virtual currencies will be treated as property for federal taxation purposes, Phillips maintains that Bitcoin is best characterized as a commodity outside the scope of the money laundering statutes. (Docket ## 37 at 7; 37-1; 54 at 6) (citing IRS Notice 2014-21, 2014 WL 1224474 (2014)). Phillips also contends that to interpret "funds" to encompass any "medium of exchange" would capture any item of value and effect absurdly overbroad results. (Docket # 54 at 3-4). Finally, Phillips asserts that the ordinary meaning of "funds" cannot include virtual currencies because they did not exist at the time that Section 1956 was enacted. (Docket ## 37 at 5-6; 46 at 4-5).

Based upon my assessment of the relevant caselaw, I find that Phillips's arguments are not a basis to dismiss the indictment. As an initial matter, I disagree that the term "funds" in Section 1956 must exclude Bitcoin because digital currencies did not exist at the time the statute was enacted. "[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity[;] it demonstrates breadth." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998); *United States v. Budovsky*, 2015 WL 5602853 at *14 (same; rejecting argument that Congress "could not have intended" the term "funds" within

---

[4] That the current charges, unlike those in *Iossifov*, arise from an undercover operation is a distinction without significance for purpose of this analysis.

the meaning of Section 1956 to include virtual currencies because they did not exist when the statute was enacted).

Further, I agree with those courts that have found misplaced the reliance upon the IRS's treatment of virtual currencies to illuminate the meaning of "funds" in the federal criminal money laundering statutes. *See Ologeanu*, 2020 WL 1676802 at *10 ("[d]efendant's argument, unburdened by caselaw citation, relies almost exclusively on an IRS Notice stating that '[f]or federal tax purposes, virtual currency is treated as property'[;] . . . [defendant] fails to explain why the IRS's interpretation of [B]itcoin tax status should control interpretation of the federal money laundering statute[,] [and] [f]ederal courts have consistently and repeatedly rejected this theory"); *United States v. Mansy*, 2017 WL 9672554 at *2 ("[d]efendants' most developed argument, that the IRS's treatment of virtual currency as 'property' means that virtual currency cannot be 'money' in other contexts, has been expressly and persuasively rejected by other courts"); *Budovsky*, 2015 WL 5602853 at *14 ("[defendant] relies on discussions of the term 'currency' that appear[s] in guidance issued by the [IRS] . . . in support of his position that virtual currency is not 'funds'[;] . . . [t]hese documents are inapposite and do not suggest that the term 'funds' should not be read to encompass virtual currencies"); *Ulbricht*, 31 F. Supp. 3d at 569 ("[defendant] notes that the IRS has announced that it treats virtual currency as property and not as currency[;] . . . the IRS . . . [has not] addressed the question of whether a 'financial transaction' can occur with Bitcoins[, and] [t]his [c]ourt refers back to the money laundering statute itself and case law interpreting the statute"); *see also Sec. & Exch. Comm'n v. Shavers*, 2014 WL 12622292, *6 (E.D. Tex. 2014) ("[i]n twenty-three places throughout the IRS Code, money is referred to as property[;] [t]hus, the [c]ourt finds no reason to conclude, based on IRS Notice 2014-21, that Bitcoin is not money"). Indeed, the IRS Notice itself acknowledges that

Bitcoin is a form of "convertible virtual currency" that "has an equivalent value in real currency, or that acts as a substitute for real currency" and "can be digitally traded between users and . . . purchased for, or exchanged into, U.S. dollars, Euros, and other real or virtual currencies." *See* IRS Notice 2014-21, 2014 WL 1224474 at *1.

Nor do I find persuasive Phillips's argument that Bitcoin should be considered a "commodity" outside the scope of the statute rather than a form of "currency" within the meaning of the term "funds." (*See* Docket # 54 at 4-6). Even assuming *arguendo* that Phillips is correct that Bitcoin – because it is a virtual, non-fiat, volatile currency – does not strictly qualify as "currency," the operative term is "funds," and, for the reasons discussed above, I find that "funds" encompasses virtual currencies like Bitcoin. *See Murgio*, 209 F. Supp. 3d at 709 (rejecting defendant's argument that the term "funds" should be limited to currency); *Budovsky*, 2015 WL 5602853 at *13 ("[defendant] argues that virtual currencies are not 'monetary instruments' and thus transactions in virtual currencies are not 'financial transactions'[;] [t]his argument ignores the statutory definition of 'financial transaction,' which includes not only monetary instruments, but also 'funds'"); *see also Sec. & Exch. Comm'n v. Shavers*, 2014 WL 12622292 at *6 ("[d]efendants assert that in order to constitute money, Bitcoin must be considered legal tender[;] [t]here is simply no evidence to support this contention"). In advancing this position, Phillips highlights the similarities between Bitcoin and gold, a commodity, notwithstanding that gold, according to the Fourth Circuit, constitutes "funds" within the meaning of the money laundering statutes. *See United States v. Day*, 700 F.3d 713, 725-26 (4th Cir. 2012) ("[t]urning to the ordinary meaning of 'funds,' we think the term refers to assets of monetary value that are susceptible to ready financial use[;] . . . [w]e accordingly

conclude that gold can constitute 'funds' under the transportation money laundering statute where it is moved as a liquid, monetary asset"), *cert. denied*, 569 U.S. 959 (2013).[5]

Finally, Phillips maintains that an interpretation of the term "funds" that is broad enough to include Bitcoin would necessarily include every item that has any value, such as, for example, a "Mickey Mantle rookie year baseball card." (Docket # 54 at 3-4). I disagree. As discussed above, "funds" means resources that are generally accepted as forms of payment or that function as a medium of exchange, *i.e.*, are readily capable of being converted into an acceptable form of payment. Baseball cards, while they may have some pecuniary value, do not generally function in that manner. *See Murgio*, 209 F. Supp. 3d at 709 ("[defendant's] concern about overbreadth . . . is meritless[;] . . . no one would consider [commodities such as] coffee or hogs 'pecuniary resources,' and although such commodities are *traded* on exchanges, they do not themselves function as a 'medium of exchange'").

For the reasons discussed above, I conclude that the term "funds" in Section 1956 encompasses Bitcoin. Accordingly, I recommend that the district court deny Phillips's motion to dismiss the indictment (Docket # 37).

As a final matter, I note that the government makes the alternative argument that the Bitcoin-for-cash exchanges constitute "financial transactions" under Section 1956 because they involved at least one monetary instrument – U.S. currency. (Docket # 42 at ¶¶ 12-21). Without supporting caselaw, Phillips counters that because it was the Bitcoin, rather than the U.S. currency, that constituted the proceeds of the illegal activity, the exchanges do not fall

---

[5] Specifically, in arguing that the Sixth Circuit's *Iossifov* analysis is flawed, Phillips characterizes Bitcoin and gold as sufficiently similar that they should be treated in a like manner. (Docket # 54 at 5 ("[c]ommodities such as oil, food, gold, silver, and gas, . . . also have a United States Dollar . . . value attached to them similar to Bitcoin, and yet it is unlikely that a court would label any of these as 'currency'[;] . . . Bitcoin is frequently compared to gold because its supply is finite")). In attempting to distinguish *Day*, by contrast, Phillips argues the converse: "[t]he differences between gold and Bitcoin are so dramatic that the *Day* holding is irrelevant to whether Bitcoin can be considered a species of funds"; "Bitcoin is simply not comparable to gold." (Docket # 46 at 5-6).

within the scope of Section 1956. (Docket # 46 at 2-3). In other words, Phillips maintains that the "monetary instrument" involved in the exchange must itself be the proceeds of the illegal activity. (*Id.*). Because the only monetary instrument (as defined in the statute) involved in these exchanges was the "clean cash," Phillips continues, Section 1956 is not implicated.

Phillips's position does not appear to find support in the plain language of the statute, which would suggest that an exchange of proceeds of specified unlawful activity, here Bitcoin, for a monetary instrument within the statutory definition, here U.S. currency, would fall within the statute's proscription against financial transactions "involving" property represented to be proceeds of specified unlawful activity. Indeed, criminal liability under Section 1956 is routinely found in cases where stolen objects are exchanged for "clean cash." *See, e.g., United States v. Carcione*, 272 F.3d 1297, 1302-303 (11th Cir. 2001) (exchange of stolen diamond for currency constituted a financial transaction under Section 1956; "[w]hen the diamond was sold . . . , funds were exchanged, and . . . the diamond represented the proceeds of the robbery"); *see also United States v. Collins*, 372 F.3d 629, 633 (4th Cir. 2004) (upholding conviction under Section 1956 where stolen jewelry was exchanged for currency); *United States v. Hatcher*, 323 F.3d 666, 671-72 (8th Cir. 2003) (upholding Section 1956 convictions premised on exchanges of stolen jewelry for currency). That said, because I find that the transactions at issue involved the movement of "funds," I need not – and do not – make a conclusive determination on this alternative argument.

## CONCLUSION

For the reasons stated above, I recommend that the district court deny Phillips's motion to dismiss the indictment **(Docket ## 37, 46, 54)**.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
November 17, 2022

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59 of the Federal Rules of Criminal Procedure.[6]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                                                 *s/Marian W. Payson*
                                                                 MARIAN W. PAYSON
                                                            United States Magistrate Judge

Dated: Rochester, New York
            November 17, 2022

---

[6] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).